| | |
|---|---|
| R.M., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 4:15-CV-706 CAS |
| v. | ) |
| | ) |
| CITY OF ST. CHARLES PUBLIC | ) |
| SCHOOL DISTRICT, R-VI, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM AND ORDER</u>**

Pending before this Court is a motion to dismiss filed by defendant City of St. Charles Public

School District R-VI (the "District"). The District moves, pursuant to Rule 12(b)(1) and Rule

12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts I, II, III, IV, V, and VII of

plaintiffs' Second Amended Complaint. Plaintiffs oppose the District's motion, which is fully

briefed and ripe for review. For the following reasons the Court will grant in part and deny in part

the District's motion to dismiss.[1]

### *I. Background*

According to plaintiffs' Second Amended Complaint (hereinafter "Complaint"), plaintiffs

C.M. and W.M. are husband and wife and are the parents of R.M.[2] The Complaint alleges that R.M.

was born deaf and at the age of three underwent surgery for a Cochlear implant. R.M. first enrolled

---

[1]Also before the Court is the District's motion to file a supplemental memorandum in support of its motion to dismiss. The Court does not require additional briefing as it has reviewed the legal authority to which the District wishes to draw the Court's attention and finds that it is not controlling or persuasive. The motion is denied.

[2]On July 20, 2015, this Court granted plaintiffs' motion for leave to file pleadings by initials.

in the District for third grade in 2006.  Between 2006 and the present, R.M. was provided an Individualized Education Program ("IEP") under the Individuals with Disabilities Education Act of 1975, 20 U.S.C. §§ 1400, et seq. ("IDEA").  R.M. attended Jefferson Middle School in the District from August 2009 through May 2010.  In February 2010, R.M. began to experience electrical shocks due to magnetic fields within the building.  The electrical fields could not be eliminated and, therefore, R.M. was transferred to Hardin Middle School.  On May 3 and 6, 2010, R.M. was again electrically shocked while at school.  Following the second incident, R.M. was taken by ambulance to St. Louis Children's Hospital for treatment.  The school electrician was unable to eliminate all the electrical fields in the middle school, and R.M. remained out of school for the balance of the school year.

R.M. returned to Hardin Middle School for seventh grade beginning in August 2010, but she again experienced electrical shocks.  For the rest of the school year, R.M. remained at home being taught by teachers and her mother.  In September 2010, R.M. was diagnosed by her psychologist with post traumatic stress disorder ("PTSD") due to the electrical shocks.  It was recommended that R.M. be transferred to a building or other school district where other students with Cochlear implants safely attend.  The District had no such building and refused to pay for R.M.'s education at another school district.  Instead, the District invented a home bound program for R.M.  Plaintiffs allege that  for eighth grade the District informed them that it was incapable of providing R.M. educational service for that school year, so they skipped R.M. from seventh to ninth grade.  Plaintiffs also allege that in ninth and tenth grades, the District did provide some educational services but they were not in compliance with R.M.'s IEP.  Plaintiffs allege the District at first refused to provide R.M. with a Communication Access Real-time Transcription ("CART").  When the District did

provide a CART, one teacher refused to use it and another did not know how. Plaintiffs also allege that R.M. stared the school year in August 2013 without an IEP, and between November and December 2013, the District changed R.M.'s IEP without notice to R.M.'s parents in violation of the IDEA.

In their Complaint plaintiffs bring the following seven claims against the District: violations of the IDEA and the Equal Protection Clause of the United States Constitution (Count I); failure to provide reasonable accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") (Count II); failure to provide public access under the ADA (Count III); disability discrimination in violation of the Missouri Human Rights Act ("MHRA") (Count IV); failure to provide public access in violation of the MHRA (Count V); negligence for personal injury under Missouri state law (Count VI); and loss of society and medical expenses under Missouri state law (Count VII).

For damages in Counts I and II plaintiffs request that they be awarded compensatory damages, costs and attorneys' fees. In Count III, plaintiffs request that the Court enter a declaratory judgment finding that the District's buildings are in violation of Title II of the ADA, prohibiting any students with R.M.'s disabilities from attending these school, and requiring the District to take corrective action to remove the magnetic fields.

In their Complaint plaintiffs allege that they have exhausted the administrative requirements under the IDEA. More specifically plaintiffs allege:

> On September 3, 2013, plaintiffs filed a Due Process Complaint with the Missouri Department of Elementary and Secondary Education. It was assigned case number 13-1552-ED before the Administrative Hearing Commission. The Due Process Complaint asserted violations of the Plaintiff R.M.'s IEPs occurring between August 30, 2011 through September 2013. The relief requested was for compensatory educational services for three (3) years of IDEA violations. On October 8, 2013,

> Plaintiffs and [the District] reached a "MEDIATION AGREEMENT" on the Due Process Complaint with [the District] agreeing to provide the compensatory educational services through May 2014.

Doc. 27 at 6.

Plaintiffs also allege in their Complaint that they have exhausted their administrative requirements under the MHRA. Plaintiffs allege:

> On June 19, 2013, C.M. filed a Charge of Discrimination with the Missouri Commission on Human Rights against [the District] bringing claims of disability discrimination. On March 12, 2014, the Missouri Commission on Human Rights issued its Notice of Right to Sue to R.M. This claim was filed on June 5, 2014, within ninety (90) days of its issuance in the Circuit Court of St. Charles County, and was assigned Case No. 1411-CC00552. The claim was added and filed in this Court on May 1, 2015. On May 4, 2015, the St. Charles County case was dismissed without prejudice.

Doc. 27 at 6.

In the motion to dismiss presently before the Court, the District argues that R.M.'s claims under the IDEA, the Equal Protection clause, and the ADA should be dismissed for failure to exhaust administrative remedies. With regard to the claims under the MHRA, the District argues they are barred by the statute of limitations because they were not filed within ninety (90) days of the Notice of Right to Sue. As for C.M. and W.M.'s claim for loss of society of their daughter and for medical expenses, the District argues that loss of society is prefaced on a wrongful death claim, and to the extent they would be able to recover such damages pursuant to the IDEA , ADA, and MHRA, they are precluded because the claims were successfully mediated or they are barred by the statute of limitations. The District also argues that Missouri law does not allow for a loss of consortium claim based on a parent-child relationship.

*II. Discussion*

**A.     Exhaustion of Administrative Remedies**

In its motion the District argues that this Court does not have jurisdiction to hear plaintiffs' claims under the IDEA, the ADA, and the Equal Protection clause of the United States Constitution because plaintiffs failed to exhaust these claims under the administrative procedures of the IDEA. In response, plaintiffs argue that they did exhaust their administrative remedies with regard to Counts I-III by participating in mediation as provided for under the IDEA. Plaintiffs argue that they achieved a favorable result as to their IDEA claims for compensatory education services and received all the remedies allowed for under the IDEA at mediation and, therefore, it would have been futile to have pursued a due process hearing or appealed to the state appeals board their other claims for compensatory damages.

The IDEA requires public school districts that accept federal funding to furnish a "free appropriate public education" to students with disabilities. 20 U.S.C. § 1412(a)(1). Congress "established procedural safeguards in the IDEA to ensure that individuals with disabilities will have the opportunity to obtain a free appropriate education." J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist., 721 F.3d 588, 592 (8th Cir. 2013) (citing 20 U.S.C. § 1415(a)). "The primary tool for implementing the aims of the IDEA is the IEP, which 'tailor[s] the statutorily required free appropriate education to each child's unique needs.'" Id. (quoting Honig v. Doe, 484 U.S. 305, 311 (1988)). The IDEA also provides procedural safeguards when disputes arise under the statute. These safeguards "include . . . an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and an opportunity for 'an impartial due process hearing' with respect to any such complaints." Id. (quoting Honig, 484 U.S. at 311–12), see

also 20 U.S.C. § 1415(b)(1), (2) and (f). A party aggrieved by the outcome of an IDEA due process hearing may, if available, file an appeal and challenge the outcome before the state educational review agency. 20 U.S.C. § 1415(g)(1).

The IDEA also requires that public school districts establish procedures whereby disputes under the IDEA can be resolved in voluntary mediation. 20 U.S.C. § 1415(e). The procedures "shall enure that the mediation process (ii) is not used to deny or delay a parent's right to a due process hearing under subsection (f), or to deny any other rights afforded under this subchapter." § 1415(e)(2)(A)(ii).

If after the administrative procedures are followed a dispute remains under the IDEA, the statute provides the right to bring a civil action in court. More specifically:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A). Compensatory damages are not available through the IDEA, Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir. 1996), however, compensatory education and attorneys' fees are. 20 U.S.C. § 1415(i)(3)(B); Birmingham v. Omaha Sch. Dist., 220 F.3d 850, 856 (8th Cir. 2000).

Other federal statutes that do provide for compensatory damages and other remedies may be applicable to students with disabilities. The IDEA does not limit the rights and remedies available to disabled children and their parents under the Constitution, the ADA, or other federal laws. However, before a party may bring a claim under a different federal statute for which relief is also

available under the IDEA, the party must first exhaust the administrative remedies under the IDEA.

20 U.S.C. § 1415(l). Section 1415(l) of the IDEA specifically provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l ).

While parties are required to exhaust their administrative remedies under the IDEA before bringing suit in federal court, the Eighth Circuit, like other circuits, has recognized three exceptions to the IDEA exhaustion requirements:  "'futility, inability of the administrative remedies to provide adequate relief, and the establishment of an agency policy or practice of general applicability that is contrary to law.'"  J.B. ex rel. Bailey, 721 F.3d at 594 (quoting Blackmon ex rel. Blackmon v. Springfield R–XII Sch. Dist., 198 F.3d 648, 656 (8th Cir. 1999)); see also Urban ex rel. Urban v. Jefferson Cnty. Sch. Dist. R–1, 89 F.3d 720, 724 (10th Cir. 1996).

In this case, C.M. filed a "Due Process Hearing Request Form" with the Missouri Department of Elementary and Secondary Education on September 3, 2013, in which she alleged that R.M. "has not been provided [a free and appropriate education] according to IDEA" for the time period from August 30, 2011, "to the present."  Doc. 17 at 1-2.   In an attached document, C.M. detailed a number of ways in which the District allegedly failed to conform with R.M.'s IEP, or improperly made changes to her IEP in violation of the IDEA.  C.M. proposed the following resolutions:

> Due to [the District]'s inability to provide regular and special education, related services, specialized material, supplementary aides and services, accommodations and modifications in conformity with the IEP, the [D]istrict should contract with an agency that has the resources available to implement the IEP.
>
> Consideration must also be given to [R.M.]'s preferences for her social and emotional support.
>
> Consideration must also be give for [R.M.] to have access to both hearing impaired and non-disabled peers.
>
> Provide compensatory services for services not provided in conformity with the IEP. Immediately provide the same services in the last agreed upon IEP (IEP dated 3/14/13) through the resolution of the complaint.

Doc. 17 at 6. In her Due Process Hearing Request Form C.M. asked for compensatory education services, but she did not request compensatory damages for such things as mental and emotional distress. C.M.'s complaint was assigned to the Administrative Hearing Commission and assigned Case No. 13-1552-ED. Sometime thereafter, the parties agreed to mediate the dispute. On October 8, 2013, the parties participated in a mediation and they were able to reach an agreement. In the mediation agreement, which was executed on October 8, 2013, R.M.'s parents and the District agreed that R.M.'s IEP would be amended to provide R.M. with homebound instruction for the remainder of the first semester of the 2013-14 school year, and the District agreed to provide compensatory homebound services for the weeks that a homebound teacher was not provided; R.M.'s parents agreed that R.M. would return to St. Charles West High School at the beginning of the second semester of the 2013-14 school year at which time the District would be fully prepared to implement the August 2013 IEP, including hiring and training an oral interpreter to act as a language facilitator; the District also agreed to provide a deaf educator to train all of the general and special education instruction staff; the District further agreed to develop an IEP for the 2014-15 school year during the spring of 2014; and finally R.M.'s parents agreed to dismiss their pending

due process complaint against the District without prejudice. Doc. 19 at 2-3. The agreement further provided that "[n]othing in this Agreement prevents Parents from filing a new request for due process or complaint to challenge the provision of services to Student in the future." Id. at 3. The Agreement did not address compensatory damages and, notably, there was nothing in the Agreement addressing the release of claims, IDEA claims or otherwise.

In the motion presently before the Court, the District argues that plaintiffs failed to satisfy the exhaustion requirements of the IDEA because plaintiffs' due process complaint ended in a settlement agreement following mediation. Citing a split decision from the Tenth Circuit Court of Appeals, A.F. ex rel. Christine B. v. Española Public Schools, 801 F.3d 1245 (10th Cir. 2015) ("Española"), the District argues that a successful mediation of a due process complaint cannot satisfy the IDEA's exhaustion requirements, even for non-IDEA claims, because there is no adverse decision to challenge in court.[3]

Plaintiffs respond and argue that by filing a due process complaint and completing voluntary mediation under 20 U.S.C. §§ 1415(b)(1), (2), and (e), they did exhaust their administrative remedies with regard to all their claims for compensatory education services, the only relief allowed under the IDEA. Plaintiffs assert that they did not pursue a due process complaint or appeal as to their claims for compensatory damages, because they are not available under the IDEA. Plaintiffs argue that having achieved all the compensatory education services available to them under the IDEA through mediation, they are now entitled to file this action for compensatory damages and

---

[3]The District moved to supplement to the record to draw the Court's attention to McCauley v. Francis Howell Sch. Dist, No. 4:15-CV-566, 2016 WL 795804 (E.D. Mo. Mar. 1, 2016), a case from the Eastern District of Missouri. This Court does not find this case to be controlling or persuasive, as the plaintiffs in that case did not file for a due process hearing or participate in mediation under the IDEA.

declaratory and injunctive relief under the Equal Protection Clause and the ADA. According to plaintiffs, this is how the statutory scheme of the IDEA is intended to work. In support of their argument, plaintiffs cite to Muskrat v. Deer Creek Public Schools, 715 F.3d 775, 785 (10th Cir. 2013), another case from the Tenth Circuit, as well as the dissent in Española, 801 F.3d at 1251. Plaintiffs also note that the Eighth Circuit has recognized futility and inadequate remedy as exceptions to the exhaustion requirements of the IDEA, and they invoke these exceptions in this case. J.B. ex rel. Bailey, 721 F.3d at 594 (quoting Blackmon ex rel. Blackmon, 198 F.3d at 656).

The Eighth Circuit has not addressed whether mediation under 20 U.S.C. § 1415(e) satisfies the exhaustion requirements of the IDEA, and few courts have. The District relies heavily on Española, 801 F.3d 1245, which it argues is "determinative" here. Española has very similar facts to the present dispute, but the Court finds that the case is not on all fours.

In Española, the plaintiff's mother believed that the defendant school district was not appropriately addressing her child's dyslexia, as the plaintiff was failing nearly all of her classes. Id. at 1251. While the plaintiff was still attending the defendant school district, the mother filed an administrative complaint in which she alleged, among other things, that the school district had not evaluated plaintiff under the IDEA, and it had failed to develop and implement an IEP. Id. at 1252. The due process complaint sought prospective relief and "compensatory education." Id. The parties in Española, like the parties here, mediated their dispute and entered into a mediation agreement. The school district agreed to identify the plaintiff as a child with "Specific Learning Disabilities" and to pay a portion of the costs of sending her to a private school. Id. The plaintiff's mother dismissed her due process hearing complaint, but then filed suit against the school district alleging disability discrimination in violation of the ADA, the United States Constitution, and Section 504

of the Rehabilitation Act. Id. The plaintiff sought compensatory damages for emotional distress and mental anguish. The school district moved to dismiss for failure to exhaust under 20 U.S.C. § 1415(l). Id.

The majority opinion held that the plaintiff's lawsuit sought the same relief that is available under the IDEA, which "trigger[ed] subsection (l)'s exhaustion requirement." Id. at 1247. The court recognized that the plaintiff was seeking compensatory damages, which are not available under the IDEA, but that the injuries she sought to redress were "capable of being redressed to some degree by the IDEA administrative procedures." Id. The court then held that mediation and settlement under subsection (e) does not meet the exhaustion requirements of subsection (l), which references subsections (f) and (g). According to the Tenth Circuit, in order to bring a lawsuit under "other Federal laws protecting the rights of children with disabilities," a plaintiff must take advantage of both subsection (f), which provides for an "impartial due process hearing" and (g), which provides that parents may file an appeal to challenge the outcome of the due process hearing before the state educational review agency. Id. at 1248. And, citing to the language of subsection (i), the Española majority opinion requires that a would-be plaintiff must be "'aggrieved by the findings and decision' of the administrative trial authorities described in subsection (f) or the administrative appellate authorities described in subsection (g)." Id. at 1247 (quoting 20 U.S.C. § 1415(i)(2)(A)). In other words, the Española majority holds that in order to have the right to bring a suit under the Constitution or other federal statute, a disabled student or parent must not be successful in pursuing some of his or her IDEA claims during a due process hearing or an appeal therefrom.

The undersigned does not agree with the view of the majority opinion. As noted by the dissent in Española, this interpretation would be inconsistent with the statutory framework of the

IDEA.  Id. at 1256.  Congress created the procedures by which parents can file a complaint and obtain a due process hearing, but it also provided for mediation to facilitate resolution of disputes outside the due process hearing procedures.  In fact, subsection (f) references the mediation procedures as an alternative to the due process hearing procedures.  See 20 U.S.C. § 1415 (f)(1)(B) (prior to the due process hearing, a preliminary meeting shall be held "unless the parents and the local educational agency agree . . . to use the mediation process described in subsection (e)").  It is nonsensical to suppose that Congress intended that in order for parents and disabled students to preserve their rights to bring suit under the Constitution or other federal statutes, they must forego the possibility of settling their IDEA claims in mediation, a procedure that is specifically provided for in the statute, and instead they must engage in the more confrontational and time consuming process of a due process hearing and appeal.  Additionally, it makes little sense to require parents and disabled students, who have been successful in mediation with regard to their IDEA claims for compensatory education, to pursue a due process hearing and appeal for related but non-IDEA claims seeking compensatory damages – damages that are not even allowed for under the IDEA.[4]

Second, the subsection upon which much of the Española majority opinion hinges, 20 U.S.C. § 1415(i)(2), addresses the right to bring a civil suit under the IDEA, not the right to bring suits under other federal statutes or the Constitution.  Subsection (i)(2) is entitled "Right to Bring Civil

---

[4]The District argues in its reply memorandum that "[no school district would be willing to settle a due process complaint, if it knew that it could still have to face a federal court action over the same issues."  Doc. 37 at 3.  The Court does not agree.  In the Court's view, there is a benefit to addressing issues of compensatory education – matters that directly impact the education of a child – in mediation, a process that can be completed more quickly than a due process hearing and appeal.  The fact that parents and disabled students might be able to bring non-IDEA claims for compensatory damages should not impede settlement, as any such claims can be addressed in a settlement agreement through, for example, a release.

Action," and in addition to giving a party "aggrieved" by the IDEA's administrative procedures the right to bring a civil suit under the statute, it sets forth the IDEA's statute of limitations and describes what the record will be in the district court once a suit is filed – restrictions that are not applicable to the Constitution or the ADA. § 1415(i)(2). The majority in Española does not adequately explain why subsection (i)(2)'s requirement that a party be "aggrieved" by the IDEA administrative procedures would apply to non-IDEA claims. In this Court's view, parents and disabled students who seek relief under the Constitution or other federal statutes must avail themselves of the IDEA's administrative procedures, which can include an impartial due process hearing, an appeal, and by reference, mediation; but there is no requirement that parents and disabled students be "aggrieved" by a due process hearing or appeal in order to file suit.

That said, even if this Court were to adopt the reasoning of the majority decision in Española, and find that successful mediation of IDEA claims does not constitute exhaustion under subsection (l), the District would not be entitled to dismissal. The Española decision is distinguishable because the plaintiff in that case did not timely assert futility and inadequate remedies arguments, as plaintiffs have done here.[5] Id. at 1249. In Española, the Tenth Circuit acknowledged that it recognized a futility exception to the IDEA exhaustion requirements in Muskrat ex rel. J.M. v. Deer Creek Public Schools, 715 F.3d 775 (10th Cir. 2013). In Muskrat, parents of a disabled student filed suit under various statutes seeking damages for "continuing medical consequences" related to the

---

[5]The District faults plaintiffs for raising the futility and inadequate remedies arguments "for the very first time" in their response memorandum. The District also argues that in support of these arguments plaintiffs have "simply made a conclusory statement with no supporting claims or evidence, which is insufficient to overcome a Motion to Dismiss." The Court does not agree. The arguments were timely made and adequately explained with supporting documentation and authority.

school district's alleged abuse of a timeout room. Id. at 785.  The court in Muskrat found that the IDEA could supply some remedial help to address the parents' concerns and, therefore, subsection (l)'s exhaustion requirement did apply to the non-IDEA claims.  Id.  But as the Tenth Circuit in Española noted, the parents, through an agreement with the school, "had obtained all the relief IDEA could possibly provide." 801 F.3d at 1249 (citing Muskrat, 715 F.3d at 785–86).  "Given this, the court [in Muskrat] held, requiring them to walk through the remaining IDEA administrative processes – when no more relief could possibly be won under the statute – would be 'futile.'"  Id. at 1249. This is exactly the same argument plaintiffs are forwarding now – that in mediation they received all of the relief IDEA could provide and, therefore, it would have been futile to have proceeded with a due process hearing and appeal on their non-IDEA claims for compensatory damages.

Like the Tenth Circuit, the Eighth Circuit has recognized futility as well as inadequate remedy, as exceptions to the IDEA exhaustion requirements.  See J.B. ex rel. Bailey, 721 F.3d at 594.  And notably, the District does not respond to plaintiffs' assertion that following successful mediation of their IDEA claims, it would have been futile for them to have continued with their due process complaint or filed an appeal.  While the Court does not agree with the reasoning in Española with regard to whether mediation satisfies the exhaustion requirements of the IDEA, even if the Court were to follow the Española approach as the District suggests, dismissal would not be warranted in this case.  The Court finds that having obtained all of the relief IDEA could provide in mediation, the plaintiffs were not required to further exhaust their administrative remedies in order to preserve their non-IDEA claims for compensatory damages or injunctive relief because

pursuing a due process complaint or filing an appeal would have been futile.  Id., Muskrat, 715 F.3d at  785–86. The District's motion is denied with regard to Counts I, II and III.

### B.     MHRA Statute of Limitations

The District also argues in its motion to dismiss that plaintiffs' state law claims of disability discrimination under the Missouri Human Rights Act should be dismissed because plaintiffs filed these claims outside the applicable statute of limitations.

The MHRA provides that "any action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party." Mo. Rev. Stat. § 213.111(1).  Plaintiffs allege in their Complaint that a charge of discrimination was filed with the Missouri Commission on Human Rights ("the Commission") on June 19, 2013, and the Commission issued its Notice of Right to Sue on March 12, 2014.  Plaintiffs filed suit against the District alleging violations of the MHRA in the Circuit Court of St. Charles County on June 5, 2014 ("State Law Cause of Action").  Plaintiffs then filed the above-captioned cause of action in this Court on May 1, 2015, more than one full year after the issuance of the Notice of Right to Sue. Three days later, on May 4, 2015, plaintiffs dismissed their State Law Cause of Action without prejudice.

In moving to dismiss the MHRA claims, the District argues that this cause of action was filed more than ninety (90) days after the date of the Notice of Right to Sue, and that Missouri's Savings Statute, Mo. Rev. Stat. § 516.230, does not apply to the MHRA.  Therefore, according to the District, the MHRA claims are untimely.  Plaintiffs respond that there was a "seamless transfer

between [the] two (2) venues" and, accordingly, their MHRA claims are not subject to the statute of limitations.

The Court agrees with the District that plaintiffs' MHRA claims are untimely. Plaintiffs' claims were filed more than ninety (90) days after the date of the right to sue letter. Mo. Rev. Stat. § 213.111(1). The fact that plaintiffs had timely filed MHRA claims against the District in Missouri state court does not preclude application of the MHRA's statute of limitations, and plaintiffs provide no legal authority otherwise. While the Missouri Supreme Court has not addressed the issue, the Missouri Courts of Appeals has concluded in several cases that Missouri's Savings Statute does not apply to the MHRA. Hutcheson v. JPMorgan Chase Bank, N.A., No. 6:14-CV-03499-MDH, 2015 WL 1401225, at *2 (Mo. Ct. App. Mar. 26, 2015); Davison v. Dairy Farmers of Am., Inc., 449 S.W.3d 81, 84–85 (Mo. Ct. App. 2014); Hutcheson v. Elec. Data Access Techs., Inc., 327 S.W.3d 622, 625 (Mo. Ct. App. 2010) ("[b]ecause the MHRA contains its own statute of limitations, the Missouri Savings Statute, Section 516.230, does not apply"). Without citing any contrary legal authority, plaintiffs argue these cases are inapplicable because unlike the cases to which the District cites, here there was no gap between the two suits – in other words, the present case was filed before the state case was dismissed. Plaintiffs label this a "seamless transfer between two (2) venues."

The Court does not find plaintiffs' arguments to be persuasive. First, the Court disagrees with plaintiffs' characterization of the series of events as a "seamless transfer." There was no transfer of the state court case to federal court, but rather plaintiffs commenced a new cause of action. Second, plaintiffs provide no authority for the notion that the overlapping of cases suspends the MHRA's statute of limitations when a new case has been filed. Accordingly, the Court dismisses as untimely plaintiffs' MHRA claims.

### C.    Loss of Society and Medical Expenses

In Count VII, which is entitled "Loss of Society and Medical Expenses," plaintiffs C.M. and W.M. allege that they have "lost the society" of their minor daughter R.M., "enduring her ridicule, isolation, physical injury, mental and emotional distress, as well as incurring medical expenses." Doc. 27 at 14.  In one short paragraph, the District moves to dismiss Count VII on the ground "that to the extent that plaintiffs would be entitled to recover such damages pursuant to the IDEA, ADA or MHRA, which they are not, those claims should be dismissed for the reasons set forth above." Doc. 33 at 10.  The District also argues that a claim for the loss of society of a child in Missouri is prefaced on the state's Wrongful Death Act, Mo. Rev. St. § 537.090, which is not applicable in this case.  The District further argues in its reply memorandum that Missouri does not recognize loss of consortium in a parent-child relationship.

The Court concurs that Missouri law does not recognize a claim for loss of consortium by parents for injury to a child, Powell v. Am. Motors Corp., 834 S.W.2d 184, 185 (Mo. 1992), and that Missouri's Wrongful Death Act is inapplicable to this case.  That said, plaintiffs C.M. and W.M. are not asserting a claim for loss of consortium or wrongful death.  Instead, they are asserting a derivative claim for damages as a result of personal injuries to their daughter when she was a minor, which is allowed under Missouri law. "When a minor is injured because of another's fault, two causes of action arise: the minor's claim for damages for personal injuries and the parents' claim for loss of services and expenses necessarily incurred by them for the minor's medical treatment." Eaves v. Boswell, 852 S.W.2d 353, 358 (Mo. Ct. App. 1993) (citing Garrison v. Ryno, 328 S.W.2d 557, 563 (Mo. 1959)).  Furthermore, as plaintiffs note in their response memorandum, jury

instructions for the recovery of such damages is set forth in the Missouri Approved Jury Instructions, Seventh Ed., 4.18 and 31.04.  The District's motion to dismiss is denied as to Count VII.

### III.  Conclusion

For the above stated reasons, the Court finds that plaintiffs' claims under the ADA and the Equal Protection clause of the Constitution are not subject to dismissal for failure to exhaust under the IDEA.  With regard to plaintiffs' claims under the MHRA, these claims are dismissed as untimely.  Finally, the Court declines to dismiss plaintiffs C.M. and W.M.'s claims for damages in Count VII, because these claims are provided for under Missouri law.

Accordingly,

**IT IS HEREBY ORDERED** that defendant City of St. Charles Public School District R-VI's motion to dismiss Counts I, II, III, IV, V, and VII of the Second Amended Complaint is **GRANTED in part and DENIED in part.**  In accordance with this Memorandum and Order, the Motion is **GRANTED** to the extent that plaintiffs' claims under the Missouri Human Rights Act in Counts IV and V of their Second Amended Complaint are dismissed.   In all other respects, the motion is **DENIED.**  [Doc. 32]

**IT IS FURTHER ORDERED** that defendant City of St. Charles Public School District R-VI's motion for leave to file a supplemental memorandum is **DENIED.** [Doc. 45]


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  19th  day of May, 2016.